FISCHER, Respondent, v. TIMBER LAKE SUPPLY CO., et al, Appellants.

(246 N. W. 97.)

(File Nos. 7348, 7351.   Opinion filed December 13, 1932.)

*B. A. Walton* and *Corrigan & Walton,* all of Aberdeen, for Appellant Commercial Credit Trust.

*P. M. Burns,* of Timber Lake, for Appellants Timber Lake Supply Company and O. J. and S. J. Fett.

*J. M. Berry,* of Ipswich, for Respondent.

POLLEY, J., On the 22d day of October, 1928, the plaintiff, A. A. Fischer, entered into a conditional sales contract for the purchase of a certain motor car from the defendant Timber Lake Supply Company. The purchase price of the car stated in the contract was $2,479.40. The contract recites that a down payment of $785 was made, leaving a balance to be paid of $1,694.80. For this amount plaintiff executed and delivered to said defendant his promissory note payable in twelve equal monthly payments of $141.20 each, commencing one month from the date of the execution of the said note.

Among other provisions, the contract contained the following: "Title to said car shall remain in Seller until all amounts due hereunder are fully paid in cash. Said note or this contract may be negotiated or assigned or the payment thereof renewed or extended without passing title of said car to purchaser. The loss, injury or destruction of said car shall not release purchaser from the payment of said note. Said note is a negotiable instrument separate and apart from this contract even though at the time of execution it may be temporarily attached hereto by perforation or otherwise. * * * Purchaser shall not remove or attempt to remove said car from the county and state given above as Purchaser's address without written consent of the Seller." Plaintiff's address is given in said contract as Eagle Butte, Dewey county, S. D.

Said contract contained the further provisions that:

"If purchaser shall fail to pay said note or any installment thereon, or breach this contract, * * * or if for any other reason Seller should deem itself or said car insecure, Seller or his representative may take possession of said car * * * wherever it may be found, and may enter any premises therefor without notice or demand and Purchaser waives all claims for damages caused

thereby, and the holder of said notes may declare it due and payable. * * * Said car may be retained by Seller, if Seller is the holder of said note, together with any and all amounts paid thereon which shall be considered for the reasonable use of said car, and Purchaser shall pay to Seller any costs for necessary repairs because of damages to said car; or said car may be sold at private sale without being at the place of sale, and with or without notice to purchaser, and Seller shall have the right at any public sale to purchase said car the same as any other person, and all laws governing such sale are hereby waived by purchaser. * * *

"This agreement constitutes the entire contract and no waivers or modification shall be valid unless written upon or attached to this contract, and said car is accepted without any express or implied warranties unless written hereon at the date of purchase."

On the date of the execution of said contract and note, the note was indorsed without recourse by the payee named therein and delivered to the defendant Commercial Credit Trust, a corporation, and the said contract, together with the title to the said motorcar, was sold and delivered to the said corporation. For such endorsement and assignment said corporation paid a valuable consideration. On the date of the above transactions, the plaintiff and the defendant Timber Lake Supply Company entered into a further contract whereby plaintiff sold and delivered to said defendant a certain traction engine and tractor plow and one Chrysler motorcar for the express consideration of $1 and other valuable consideration, and on the same day plaintiff and defendant Timber Lake Supply Company entered into the following agreement: "It is hereby agreed between the Timber Lake Supply Company, party of the first part, and A. A. Fischer, party of the second part; that whereas Mr. Fischer has bought a Hupmobile Eight Sedan, on which there is a note of sixteen hundred forty-five dollars ($1645) due in monthly payments, it is hereby agreed that the Timber Lake Supply Company will make the payments up to five hundred sixty-six dollars and forty cents ($566.40), and A. A. Fischer will pay this balance to the Commercial Credit Trust."

As a result of these transactions, plaintiff was placed in possession of the Hupmobile motorcar on which he was indebted to the defendant Commercial Credit Trust in the sum of $1,694.80,

payable in twelve equal monthly installments, with an agreement with the Timber Lake Supply Company to pay said installments down to $566.40. In other words, as between plaintiff and the Commercial Credit Trust Corporation, he was owing $1,694.80, while as between plaintiff and the Timber Lake Supply Company the purchase price of the car was all paid except $566.40.

The Timber Lake Supply Company failed to make the payments provided for in the above contract, nor did the plaintiff make the payments that were due and payable for the months of December, January, and February. He further violated the terms of the said contract by removing the said car from the county of Dewey. The car was in Brown county at least twice and was finally stored for the winter on a farm in Edmunds county some ten miles out in the country from Ipswich.

On or about the 25th of February, 1929, the defendant Commercial Credit Trust directed the Timber Lake Supply Company to repossess the said car. After some search the car was found in the place where stored as above stated. It was removed from there, with the knowledge and consent of plaintiff, and taken to Ipswich, where it was stored in a garage. It remained there for a period of over thirty days, when it was taken back to Timber Lake, and after being held in storage there for a period of ten days, it was sold at private sale. Plaintiff then commenced this action, claiming that the defendants, Commercial Credit Trust, Timber Lake Supply Company, O. J. Fett and S. J. Fett, managing officers of the Timber Lake Supply Company, had converted the car.

In his complaint plaintiff alleges that prior to the taking of the car by the Commercial Credit Trust he had paid the sum of $1,913.40 on the purchase price thereof; that this was more than half of such purchase price; and that in selling the car at private sale defendants violated the provisions of sections 17-22, c. 137, Laws 1919, known as the Uniform Conditional Sales Act. This contention is based upon the theory that he should have been given a credit on his note for the value of the tractor and plow that he transferred to the Timber Lake Supply Company. Of this transaction the defendant Commercial Credit Trust had no knowledge, actual or constructive, until after it purchased the note and the conditional sales contract.

At the close of plaintiff's case and again at the close of all of the testimony, defendant Commercial Credit Trust moved for a directed verdict. Both motions were denied and the case was submitted to the jury. The jury returned a verdict for plaintiff for the total amount he claims to have paid on the purchase price of the car with interest. Defendant Commercial Credit Trust then moved for judgment notwithstanding the verdict. This motion was denied, and judgment was entered in favor of plaintiff and against the defendants, Timber Lake Supply Company, O. J. Fett, S. J. Fett, and Commercial Credit Trust. Motion for new trial was denied. Commercial Credit Trust appeals individually, and Timber Lake Supply Company, O. J. Fett, and S. J. Fett, appeal jointly. Both appeals were submitted on the same argument, and both are disposed of by this opinion.

We are not able to agree with respondent's theory of the case. The note involved is negotiable in form. It was indorsed and transferred to appellant before maturity, for a valuable consideration, and without notice of any infirmities in the indorser's title. As between the plaintiff and the Timber Lake Supply Company, there is no doubt that the Timber Lake Supply Company ought to have paid the note down to $566.40, but appellant was not a party to that transaction, had no knowledge thereof until after it had parted with its consideration for the note, and is not bound thereby.

Respondent's contention that appellant violated the provisions of sections 17-22, c. 137, Laws 1919, in taking and selling the car without notice, is based upon the theory that he should have credit on the note for the value of the tractor and plow sold to the Timber Lake Supply Company. It is his contention that with this amount added to the original cash payment of $141.20 that was paid on the note in December, 1928, he had paid $1,913.40 on the note. This is more than half of the purchase price of the car. The evidence does not support this contention. We have already seen that plaintiff was not entitled to credit for the value of such machinery; therefore, one-half of the purchase price had not been paid and appellant was not required, under the provisions of section 20, c. 137, Laws 1919, to comply with the provisions of section 19 of said act.

Appellant Commercial Credit Trust was acting within its rights under the conditional sales contract in repossessing and disposing of the car in the manner it did, and was not guilty of the conversion of the car. The appellants O. J. Fett, S. J. Fett, and Timber Lake Supply Company were acting on behalf of and upon instructions from the Commercial Credit Trust in repossessing and disposing of the car, and they were not guilty of conversion of the car.

The trial court should have directed a verdict for appellants, but not having done so, it should have entered judgment for all the appellants, notwithstanding the verdict.

The judgment and order appealed from are reversed, with directions to the trial court to dismiss the action as to all the appellants.

CAMPBELL, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.